**Gary FACIO, Plaintiff/Appellee and Cross–Appellant,**

**v.**

**The Hon. Maurice JONES, Judge, Third Circuit Court, Salt Lake County, Sandy Department, Defendant/Appellant and Cross–Appellee, and**

**Collection Management Agency, Inc., a Utah corporation, Defendant/Appellant.**

**No. 89–4136, 89–4139, 89–4140, 90–4053 and 90–4054.**

United States Court of Appeals, Tenth Circuit.

March 26, 1991.

---

Brian M. Barnard (John Pace with him, on the brief), of the Utah Legal Clinic Foundation, Salt Lake City, Utah, for plaintiff/appellee and cross-appellant.

Carlie Christensen, General Counsel, Administrative Office of the Court, Salt Lake City, Utah, for defendant/appellant and cross-appellee.

Ralph C. Amott, Provo, Utah, for defendant/appellant.

Before MOORE, TACHA, and EBEL, Circuit Judges.

EBEL, Circuit Judge.

This is an appeal and cross-appeal from a judgment of the federal district court under 42 U.S.C. § 1983 which declared unconstitutional the Utah state rule requiring that a default judgment debtor show a meritorious defense before the default judgment against him could be vacated. The district court also granted plaintiff costs and attorney's fees under 42 U.S.C. § 1988. In addition, plaintiff cross-appeals the district court's denial of a request for attorney's fees against the state court judge. We do not reach the merits of this appeal because we find that the district court lacked subject matter jurisdiction to hear the original case.

## FACTS

Gary Facio, the plaintiff below, wrote a bad check. Mr. Facio received notice that the check had bounced and thereafter sent a money order to cover the debit and expenses. For reasons not entirely clear, one appellant, Collection Agency Management, nevertheless instituted a civil action against Mr. Facio in a Utah state court based on the bad check. Although Mr. Facio was validly served with process and thus had received notice of that litigation, he failed to answer because he apparently believed that the money order had settled the controversy. Ultimately, a default judgment was entered against him. Mr. Facio then filed a motion to set aside the default judgment pursuant to Utah Rules of Civil Procedure 55(c) and 60(b). The state court judge—the Honorable Maurice Jones—denied the motion because Mr. Facio failed to present proof of a meritorious defense as required by the Utah Supreme Court's interpretation of Rules 55(c) and 60(b). Eventually, the judgment was satisfied through garnishment of Mr. Facio's wages and bank account.

Thereafter, Mr. Facio filed suit in federal district court. He sought

declaratory relief under 42 U.S.C. § 1983 for deprivation of property without due process of law in violation of the Fourteenth Amendment.... Specifically, plaintiff contend[ed] that Judge Jones'

application of Utah Rules of Civil Procedure 55(c) and 60(b) [was] unconstitutional to the extent that a defendant [was] required to offer proof of a meritorious defense.... By pendant claim, plaintiff challenge[d] the validity of the default and default judgment entered against him.

*Facio v. Jones*, 714 F.Supp. 504, 505–06 (D.Utah 1989).

The district court agreed with Mr. Facio, finding that the Utah procedural requirement that a meritorious defense be presented before a default judgment could be set aside was unconstitutional under *Peralta v. Heights Medical Center, Inc.*, 485 U.S. 80, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988). The district court set aside the default judgment and ordered costs to be paid by both Judge Jones and the collection agency and attorney's fees to be paid by the collection agency only. Judge Jones and the collection agency appealed. Mr. Facio cross-appealed, claiming that the district court did not articulate reasons sufficient to exempt Judge Jones from paying attorney's fees.

## DISCUSSION

The district court considered the possibility that it did not have jurisdiction over the case. In particular, the court referred to the Tenth Circuit case of *Razatos v. Colorado Supreme Court*, 746 F.2d 1429 (10th Cir.1984), *cert. denied*, 471 U.S. 1016, 105 S.Ct. 2019, 85 L.Ed.2d 301 (1985) for the proposition that "[i]t is clearly established law that the Supreme Court has the exclusive power to review state court decisions. However, federal trial courts can adjudicate civil rights complaints such as that brought by plaintiff without directly reviewing state court decisions." *Facio*, 714 F.Supp. at 506. We disagree with that conclusion as it applies to the particular facts of this case. We hold that the district court did not have jurisdiction to consider Mr. Facio's lawsuit and, therefore, we do not reach the merits on appeal.

In his federal action, Mr. Facio seeks two types of relief. First, he wants the default judgment against him set aside. Second, he asks the federal courts to declare the Utah Rules of Civil Procedure 55(c) and 60(b) unconstitutional as applied by the Utah courts.

To the extent that Mr. Facio sought to have the federal district court set aside a state default judgment, the federal court lacked jurisdiction to grant that relief. In *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), the Supreme Court made it entirely clear that federal district courts and federal courts of appeals lack jurisdiction to review or reverse a state court judgment. Any such federal review has to be addressed directly to the United States Supreme Court from the state's highest court pursuant to 28 U.S.C. § 1257.

Mr. Facio also seeks a second form of relief that would have the federal court declare the Utah default rules unconstitutional as applied. However, *Feldman* not only prohibited direct review of state judgments by lower federal courts, but it also prohibited those federal courts from issuing any declaratory relief that is "inextricably intertwined" with the state court judgment. *Feldman*, 460 U.S. at 483–84 n. 16, 103 S.Ct. at 1315–16 n. 16; *Razatos*, 746 F.2d at 1433. We believe that Mr. Facio's request for declaratory relief is inextricably intertwined with his request to vacate and to set aside the default judgment. In this case, the two forms of relief are so intertwined, in fact, that if Mr. Facio is not able to set aside the default judgment against him, he would lack standing to assert his second claim, which is the request that the federal court declare Utah's default judgment procedures unconstitutional. Unless Mr. Facio's default judgment is upset, his only interest in Utah's default judgment procedures is prospective and hypothetical in nature. He cannot establish a sufficient interest in the future application of those procedures to him to establish a constitutional case or controversy.

Because Mr. Facio's threshold ability to establish standing with regard to his claim for declaratory relief is dependent upon his ability to upset the default judgment

against him, that presents a classic case of an inextricably intertwined relationship between the two requested types of relief. For instance, this court in *Anderson v. Colorado*, 793 F.2d 262 (10th Cir.1986), refused to allow a plaintiff to hide behind the language of a general attack on state procedures while bringing what was in reality a claim to overturn a state court decision. We stated there, in a holding that is equally applicable here, that "[w]here a constitutional issue could have been reviewed on direct appeal by the state appellate courts, a litigant may not seek to reverse or modify the state court judgment by bringing a constitutional claim under 42 U.S.C. § 1983." *Id.* at 263.

If the two forms of relief Mr. Facio seeks are separated and the request for declaratory relief is looked at in isolation, Mr. Facio lacks standing to assert that claim. He has not demonstrated any real chance of being subjected in the future to Utah's procedures for reversing default judgments. Indeed, after separating out Mr. Facio's impermissible request that the federal district court overturn the state judgment against him, his situation is indistinguishable from that of any other citizen of Utah who, without any palpable chance of being subjected to those procedures in the future, might desire to challenge that state's default judgment rule.

■ Our analysis is consistent with, and well-grounded in, Supreme Court cases which have held that while a plaintiff who has been constitutionally injured can bring a § 1983 action to recover damages, that same plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured in the future. Thus, "[s]tanding to obtain injunctive and declaratory relief must be analyzed separately from standing to obtain retrospective relief." M. Schwartz & J. Kirklin, *Section 1983 Litigation: Claims, Defenses, and Fees* § 2.5, at 29 (1986). In this regard, cases such as *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) and *Golden v. Zwickler*, 394 U.S.

103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969) are analytically controlling.

In *Lyons,* a citizen brought suit under § 1983 in federal district court, alleging that Los Angeles police officers had unconstitutionally applied a dangerous "chokehold" to his neck. Plaintiff sought damages and also requested an injunction that would have prevented the police from using chokeholds in similar situations. The Court found that although Lyons had allegedly suffered actual harm—and could presumably recover damages under § 1983—he could not "demonstrate a case or controversy with the City that would justify the equitable relief sought" because "standing to seek the injunction requested depended on whether he was likely to suffer future injury from the use of the chokeholds by police officers." *Lyons,* 461 U.S. at 105, 103 S.Ct. at 1666. *See also Golden,* 394 U.S. at 109–10, 89 S.Ct. at 960–61 (declaratory judgment action, seeking to invalidate state statute as unconstitutional, dismissed on the grounds that although plaintiff had been prosecuted under the statute the chance of plaintiff's repeat exposure to the statute was remote and thus plaintiff lacked standing).

Although the cases of *Peralta, Feldman,* and *Razatos* offer the beginning of an analytical framework for our analysis, they do not squarely address the issue in this case because in those cases, the standing of the plaintiff to seek declaratory relief, and hence the jurisdiction of the court, was beyond dispute. In *Peralta,* where the Supreme Court reviewed a state court judgment, the appellant pursued his state court appeal through the state supreme court, and then took the case *directly* to the United States Supreme Court. That is precisely the procedure that is authorized by *Feldman* and 28 U.S.C. § 1257; indeed, *Feldman* indicated that it was the exclusive method by which a federal court can review a state court judgment. *Feldman,* 460 U.S. at 476, 103 S.Ct. at 1311.

The cases of *Feldman* and *Razatos* involved plaintiffs who had been denied admission to a particular state's bar, and therefore wanted to have the allegedly un-

constitutional law invalidated so that they could practice law in the state or district. But in each case, it was clear that even though the federal district court could not reverse the adverse state court judgment that had been rendered against the plaintiffs, the plaintiffs still had standing because they could reapply to the state's bar. In other words, even though the individual state court decisions stood against them, they each still had an interest in practicing law in the state or district involved and therefore had standing to assert that the restrictive bar admission rules should be declared unconstitutional. Thus, in each of those cases the federal court had before it a real case or controversy.

In contrast, if Mr. Facio's default judgment stands—and it must because it is final under state law and under 28 U.S.C. § 1257 the federal district court has no jurisdiction to review it—he cannot demonstrate any continuing interest in having Utah's default judgment rules set aside. The default against him is final, whether or not the default judgment rules may later be held unconstitutional. Any ruling now that Utah's procedures to vacate default judgments are unconstitutional could not undo the judgment against Mr. Facio anymore than it would undo the countless other default judgments that presumably have been entered in Utah pursuant to this rule and have long since become final.

Unable to attack the final default judgment rendered against him and without any evidence that he will again be subject to Utah's default provisions, Mr. Facio is left with no interest greater than that of any other citizen of Utah. Accordingly, Mr. Facio's action must be dismissed; the federal courts have "no jurisdiction to pronounce any statute, either of a State or of the United States, void, because irreconcilable with the Constitution, except as it is called upon to adjudge the legal rights of litigants in actual controversies." *Liverpool, New York & Philadelphia Steamship Co. v. Commissioners of Emigration*, 113 U.S. 33, 39, 5 S.Ct. 352, 355, 28 L.Ed. 899 (1885). *See Lyons*, 461 U.S. at 111, 103 S.Ct. at 1670; *Golden*, 394 U.S. at 110, 89 S.Ct. at 960.

We should add that any concern about whether the *Feldman* rule effectively isolates state court decisions from federal review is unfounded. First, there is the obvious alternative open to litigants—and it was open to Mr. Facio—to appeal the state court decision through the state courts and then to seek certiorari review by the United States Supreme Court. Second, it may be possible for some litigants (as, perhaps, credit companies) to demonstrate that the repeated application of default judgment rules operate to their continuing harm even though a particular case may be final. Thus, they may be able to attack the rule *if* they are able to establish that the particular rule sufficiently impedes their future action. *See Clements v. Fashing*, 457 U.S. 957, 962, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508 (1982). However, Mr. Facio cannot demonstrate that requirement because for him this was a one-shot case. Indeed, the Supreme Court has stated that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96, 94 S.Ct. 669, 675–76, 38 L.Ed.2d 674 (1974).

The *Feldman* rule is soundly and clearly based in the language of 28 U.S.C. § 1257 and in the public policy of federalism. Federal district courts are specifically proscribed from the business of reviewing state court judgments. Mr. Facio's request for an order reversing his final default judgment was outside the district court's jurisdiction. Likewise, his request for declaratory relief was hopelessly intertwined with his claim for retrospective relief. If the different remedies Mr. Facio seeks *are* separated, then he is left with no case or controversy to challenge the future application of that rule.

Thus, the district court did not have jurisdiction to consider Mr. Facio's claims. The district court order is hereby VACATED and the matter is REMANDED with instructions that the action be DISMISSED for lack of jurisdiction.

MOORE, Circuit Judge, dissenting:

While it makes no difference to the outcome of this case, I must respectfully dissent. As I interpret the record here, the thrust of Mr. Facio's case is to have Utah's application of its Rules of Civil Procedure 55(c) and 60(b) declared constitutionally deficient. As an independent pendent claim, if successful in the declaratory action, Mr. Facio seeks to have the default judgment set aside. As a consequence of that interpretation, I do not believe *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), is apposite. Following *Doe v. Pringle,* 550 F.2d 596 (10th Cir.1976), *cert. denied,* 431 U.S. 916, 97 S.Ct. 2179, 53 L.Ed.2d 227 (1977), and *Razatos v. Colorado Supreme Court,* 746 F.2d 1429 (10th Cir.1984), *cert. denied,* 471 U.S. 1016, 105 S.Ct. 2019, 85 L.Ed.2d 301 (1985), I would hold Mr. Facio's declaratory judgment action is not inextricably intertwined with the state default judgment and conclude the district court had jurisdiction.

That conclusion reached, however, Mr. Facio is entitled to relief because the district court misapplied *Peralta v. Heights Medical Center, Inc.,* 485 U.S. 80, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988). *Peralta* was predicated upon the lack of personal jurisdiction over the defaulting party. By applying *Peralta* to this case, in which personal jurisdiction attached prior to entry of the default judgment, the trial court extended the *Peralta* rule beyond the Supreme Court's intent. As a consequence, I would reverse the judgment of the district court.